UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASEN TODD SMITH,

               Plaintiff,               Case Number 08-14118
v.                                          Honorable David M. Lawson
                                                      Magistrate Judge Virginia M. Morgan

BILL CATINELLA, SAL AHMED,
SHERRY BURT, WILL RILEY,
C. BRADSHAW, YONKIE, and PRINCE,

               Defendants.
_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING
PLAINTIFF'S OBJECTIONS, AND DENYING
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

     The matter is before the Court on the plaintiff's objections to a report filed by Magistrate Judge Virginia M. Morgan recommending that the plaintiff's motion for a preliminary injunction be denied. The plaintiff is a prisoner in the custody of the Michigan Department of Corrections. Apparently, he had planned to harass the state judge who sentenced him by filing bogus liens against the judge's property by using provisions of the Uniform Commercial Code (UCC) that define the rights and obligations of debtors and creditors. The defendants in this case are prison officials who applied certain disciplinary rules that effectively upset the plaintiff's plan. The plaintiff filed the present lawsuit *pro se* under 42 U.S.C. § 1983, alleging that the Constitution protects him against the prison officials' efforts to interfere with the plaintiff's lien-filing activities.

     The matter was referred to Judge Morgan under an order authorizing her to conduct all pretrial proceedings. The plaintiff had filed with the complaint his motion for preliminary injunction to compel the defendants to provide him access to legal documents and copies so he can pursue this litigation. On January 27, 2009, Judge Morgan filed her report recommending denial of a

preliminary injunction. The plaintiff sought and was granted an enlargement of time to file objections, which he did. The matter is before the Court for a *de novo* review. Upon review, the Court finds that the plaintiff's objections lack merit and Judge Morgan was correct in her conclusion. Therefore, the motion for preliminary injunction will be denied.

I.

The gravamen of the plaintiff's complaint is that Michigan Department of Corrections officials interfered with his rights of access to courts by denying him access to certain books in the prison's law library, refusing his requests to photocopy certain legal documents, and not sending the mail that he addressed to his original sentencing judge. The plaintiff pleaded guilty in July 2006 to three counts of possession of child sexually abusive material, *see* Mich. Comp. Laws § 750.145c(4)(a), and was sentenced to a prison term of two to four years. His maximum discharge date is December 2, 2010.

The plaintiff apparently intends to place a lien on the property of his sentencing judge using the provisions of the Uniform Commercial Code (which would be a felony under Michigan law, *see* Mich. Comp. Laws § 440.9501(6)). To accomplish this objective, on April 30, 2008 the plaintiff mailed to Judge Philip E. Rodgers, Jr. of the Grand Traverse County, Michigan circuit court a "Motion Pursuant to MCR 2.110-112 Third Party Injured." When Judge Rodgers did not respond, on May 15, 2008 the plaintiff sent him a "Notice of Default and Opportunity to Cure" and the "Affidavit of the Notice of Default." In response to these mailings, Judge Rodgers contacted Bill Catinella, a field supervisor at the Department of Corrections, requesting that Jasen Smith be prohibited from sending him any correspondence. Catinella recounted the details of his conversation with Judge Rodgers in his directive to the Parnall facility where the plaintiff was housed at the time

as follows: "The Judge is not particularly amused by Mr. Smith's correspondence and wishes for it to be handled appropriately by the Michigan Department of Corrections."

On June 19, 2008, defendant Sal Ahmed sent Smith a notice of intent to conduct an administrative hearing.  Assistant Resident Unit Manager Halsey held conducted the hearing, and on June 30, 2008, Halsey issued the following disposition: "Smith is hereby notified that any written correspondence to Judge Rodgers from him is prohibited as described in paragraph D item #6 of PD 05.03.118, 'Prisoner Mail.'  Should Smith send further written correspondence to Judge Rodgers, he is subject to discipline in accordance with PD 03.03.105, 'Prisoner Discipline.'" No other discipline was imposed.

> The MDOC policy cited by defendant Halsey states:
>
> Prisoners shall be permitted to send and receive uncensored mail to or from any person or organization unless the mail violates this policy or Administrative Rule 791.6603.  Mail shall not be prohibited <u>solely</u> because its content is religious, philosophical, political, social, sexual, unpopular or repugnant.  However, mail shall be prohibited if it is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner.  This includes the following:
> . . .
> Mail addressed to anyone who has objected to receiving mail from the prisoner sending the mail.  This only applies after the prisoner has been notified of the objection.  A prisoner who continues to send mail to a person who has objected to receiving mail from that prisoner after receiving notice of the objection also may be subject to discipline in accordance with PD 03.03.105 "Prisoner Discipline."

Ex. 1 to Def. Response to Pl.'s Mot. for Prelim. Inj., MDOC Policy Directive 05.03.118, "Prisoner Mail," ¶ D.6 (effective 01/01/06).

The plaintiff went through several rounds of grievances against defendants Ahmed and Catinella to appeal Halsey's decision, but he obtained no relief, so he filed this lawsuit.  The plaintiff complains that under the relevant policy, Halsey, an assistant resident unit manager, was not the

proper person to conduct the hearing; rather, the administrative hearing had to be conducted by a hearing officer from the Department of Hearings and Appeals Division or the Hearings Officer who conducts major misconduct reports in the administrative building. The plaintiff originally named as defendants Bill Catinella, Sal Ahmed, Warden Sherry Burt, Acting Warden Will Riley, and Cheryl Bradshaw. In an amended complaint, the plaintiff added two prison librarians as defendants. One of them, Ms. Lou Yonkie, allegedly refused to copy provisions of the UCC for the plaintiff and stated that she would have to confiscate the UCC documents from the inmate if she discovered that he had them. Another one, librarian Prince, allegedly removed from the library shelf Title 22, sections 611-612 of the United States Code (dealing with registration of foreign propagandists), citing instructions of Deputy Warden Will Riley as justification.

In his motion for preliminary injunction, the plaintiff asks the Court to:

order the defendants to refrain from interfering with plaintiff's litigation. . . . Also that all the defendants cease in hindering me of any access to the courts, or any law regardless if it is UCC or MCL or USC as all is law adopted by the State of Michigan. . . . and another department of the same State cannot violate law . . . adopted by the United States.

Pl.'s Mot. for Prelim. Inj. [dkt # 3], at 10.

The defendants filed a response in opposition to the motion.

Magistrate Judge Morgan recommended denial of the plaintiff's motion because she found little chance that the plaintiff would succeed on the merits of his claims. She concluded that the plaintiff's mailings to his sentencing judge did not implicate his First Amendment rights of access to courts, and the plaintiff failed to point to any litigation-related injury that he suffered because of the defendants' actions. Judge Morgan further found that the plaintiff's alleged "constant state of worry" about his inability to contact Judge Rodgers does not establish the kind of irreparable harm

that would warrant the issuance of preliminary injunction. Judge Morgan also concluded that penological considerations required substantial deference to the defendants' regulatory policies, and therefore public policy favors denial of the plaintiff's motion.

In his objections, the plaintiff does little more than reiterate his liability theory from his complaint. First, he claims that he has shown a strong likelihood of prevailing on the merits because "the Correctional facility are [*sic*] in fact hindering his litigation which is in fact causing injury, the injury being inflicted upon plaintiff is that if he was permitted to proceed with his legal litigation it is possible that Plaintiff might have been freed from this incarceration." Pl.'s Objs. at 2 (alterations in the original). Relying on *Bounds v. Smith*, 430 U.S. 817 (1977), he argues that a prisoner's right of access to courts extends not only to direct appeals, habeas corpus applications, and civil rights claims, but also to collateral attacks on state-court convictions. Smith believes that the prison officials have no right to interfere "with any type of Material going to a Court. . . ." *Ibid*. Smith suggests that this Court should contact his expert witness Barton Buhtz, who is knowledgeable of the UCC and who would be able to evaluate whether the plaintiff's UCC filings against Judge Rodgers are in fact legitimate. He says that the injunction will not harm anyone and will in fact free the MDOC's time to handle more pressing concerns, and he reasons that public interest will be served by an injunction because compliance with the Constitution is in the public interest.

II

Generally, objections to a report and recommendation are reviewed *de novo*. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court

may accept, reject, or modify, in whole or in part, the findings or recommendations to which objection is made."). However, the Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380). "[T]he failure to file specific objections to a magistrate's report constitutes a waiver of those objections." *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

The grant of a preliminary injunction is an extraordinary remedy. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). When a party seeks injunctive relief, the Court considers the following four factors: (1) the likelihood of the party's success on the merits of the claim; (2) whether the injunction will save the party from irreparable injury; (3) the probability that granting the injunction will substantially harm others; and (4) whether the public interest will be served by the injunction. *See Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.,* 134 F.3d 749, 753 (6th Cir. 1998); *Six Clinics Holding Corp., II, v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997); *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985).

"[T]he four factors are not prerequisites to be met, but rather must be balanced as part of a decision to grant or deny injunctive relief." *Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995). This court need not make specific findings regarding each of the four factors if fewer factors are dispositive of the issue. *See Six Clinics Holding Corp.,* 119 F.3d at 399. "Although no one factor is controlling, a finding that there is simply no likelihood of success

on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000). The plaintiff has the burden of proof, and that burden is the same irrespective of whether the relief sought is mandatory or prohibitive. *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998).

The likelihood of the plaintiff's success on the merits must be measured against the validity of the legal premise he advances in his amended complaint in this case. The First Amendment guarantees the right of citizens to "petition the Government for a redress of grievances." U.S. Const. amend. I. This clause has been found to include a prisoner's right of access to the courts. *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). The Supreme Court has held that to implement that right for those in custody, prison authorities must assist prisoners in the preparation and filing of meaningful legal papers by providing them with adequate law libraries or adequate assistance from persons trained in the law. *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). But the rights and obligations delineated in *Bounds* are not without limits. The Supreme Court has explained that

> . . . *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

The Sixth Circuit has interpreted *Lewis* narrowly, holding that "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Although taken literally, this articulation misstates *Lewis*, since the

right to collaterally attack a conviction or sentence includes more than filing habeas corpus actions; however, the idea expressed is that prisoners must have access to the courts to mount legitimate challenges to the fact and conditions of confinement. The Constitution is not infringed if prison rules interfere with other sorts of litigation that do not amount to a petition for redress of grievances.

The plaintiff's argument on the merits of his claim, reduced to its essential components, is that he has a right to file liens against the property of the sentencing judge because such liens would generate revenue that would assist the plaintiff in obtaining his freedom. He also seems to argue that the MDOC regulation, which limits his freedom to write to the state trial judge, is an unconstitutional restriction on his access to the courts. Neither of these claims have any merit.

The first argument is patently frivolous. The plaintiff has no right to file fraudulent liens against the state trial judge who sentenced him. The plaintiff has pointed to no valid debt and no valid security interest. His fanciful filings cannot create an encumbrance that the law does not recognize. A prisoner alleging interference with his right of access to the courts must be able to point to an actual injury that he suffered as a result of denial of such access. *See Lewis*, 518 U.S. at 351. A prisoner must also establish that his underlying claims compromised as a result of the denial of access to the courts were legitimate and non-frivolous. *See Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999). Since the plaintiff has failed to make either of these showings, actions by MDOC to restrict the plaintiff's lien-filing activity cannot be unconstitutional.

Moreover, the plaintiff's claims have nothing to do with a direct appeal of his underlying convictions, a collateral attack on his convictions or sentences, or any independent civil rights issues relating to the conditions of his confinement. Even if the plaintiff were allowed to proceed with his filings under the UCC, these filings would never have led to reassessment of his underlying

conviction or sentence. Therefore, the plaintiff's claims of access to the courts do not fall within the ambit of the First Amendment as interpreted by the Supreme Court in *Lewis v. Casey*.

As to the second argument, the Sixth Circuit recently approved an injunction against the MDOC prohibiting the enforcement of Rule HH.23 of MDOC Policy Directive 05.03.118, a part of which is relevant to the present case. *Jones v. Caruso*, 569 F.3d 258 (6th Cir. 2009). However, that case provides the plaintiff no help. In *Jones*, the court addressed a rule that prohibits prisoners from receiving "mail that is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner." According to the policy, one of the items that poses "such risks within a correctional facility under all circumstances and therefore shall be rejected" was UCC-related mail, defined as:

> 23. Mail regarding actions that can be taken under the Uniform Commercial Code (UCC) *which could be used to harass or threaten another individual, including the filing of a lien against the individual.* This does not include legal materials which set forth the statute or provide a scholarly legal analysis of the UCC.

*Id.* at 262 (quoting MDOC PD 05.03.118 HH.23) (emphasis in the original). The plaintiff in that case possessed certain literary materials that included references to the UCC but that were not associated with criminal or fraudulent activity. Jones also attempted to send a letter to the Michigan Secretary of State seeking forms related to the Michigan copyright and trademark registration laws, and prison authorities intercepted and returned Jones's correspondence without explanation. After Jones exhausted his administration remedies, he sought a variety of remedies in the district court including a declaration that the rule under which his mail was intercepted violated the First Amendment, and an injunction to prevent the enforcement of that rule.

The district court granted preliminary injunctive relief, and the Sixth Circuit affirmed. The court found that the prisoner was likely to succeed on the merits of his First Amendment claim

because "reasonable alternatives to Rule 23 exist at what appears to be a minimal cost to MDOC," and these reasonable alternatives "fully accommodate[] the prisoner's rights at *de minimis* cost to valid penalogical interests." *Id.* at 272. For alternatives, Jones pointed to Rule D.7 and Rule HH.3 of Policy Directive 05.03.118 that were enacted to prevent inmates from receiving through the mail or otherwise possessing UCC-related materials that would lead to fraudulent misconduct. The court observed that the MDOC failed provide any evidence that "Rule 23 is necessary to further Defendants' undoubtedly legitimate interest in preventing prisoners from filing fraudulent UCC liens." *Id.* at 275. The court explained:

> We recognize Defendants' concern over the rampant problem of prisoners' filing of fraudulent liens, and we do not question that in most cases, we defer to prison administrators' professional judgment in regard to instituting and enforcing prison policies. Nonetheless, here, such deference is not warranted.
>
> Defendants have not provided us with any reasons why they cannot adequately regulate prisoners' ownership and use of UCC-related materials through alternative regulations, i.e. Rules 7 and 3, Mich. Comp. Laws § 440.9501, and other prison regulations. . . . Had Defendants given us some indication that the cost of regulating UCC materials without Rule 23 was more than "*de minimis*," then perhaps we would view this case differently. However, our review of the record and the parties' briefing indicates that the preliminary injunction is warranted.

*Id.* at 278-79 (citations omitted).

In the present case, the plaintiff was prohibited from corresponding with Judge Rodgers under paragraph D, item 6 of the Policy Directive 05.03.118, and was disciplined under Policy Directive 03.03.105, "Prisoner Discipline." Item 6 of paragraph D prohibits prisoners from sending the mail "addressed to anyone who has objected to receiving mail from the prisoner sending the mail," and validity of this regulation was not questioned in *Jones*. The prison officials also justified their restriction against the plaintiff's mail under item 3 of paragraph HH of the PD 05.03.118,

-10-

prohibiting prisoners from receiving mail advocating or promoting the violation of state or federal laws. Both of these regulations remain intact following *Jones*.

In promulgating and enforcing these regulations, prison administrators are entitled to "substantial deference" by the courts. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). As long as there is a valid, rational connection between the policy and legitimate penological interests, courts should not second-guess prison discipline policies. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The policy directive that authorized the prison to deny Smith the ability to initiate unwanted contact with Judge Rodgers and to deprive Smith of access to UCC materials that likely will be used to file fraudulent liens is rational and sensible. It is unlikely, therefore, that the plaintiff will succeed on the merits of his claim that his First Amendment rights have been violated.

Although a finding that there is simply no likelihood that the plaintiff will prevail on the merits is usually fatal, *see Gonzales*, 225 F.3d at 625, the magistrate judge was also correct in her assessment of the remaining three factors in the preliminary injunction analysis. Smith will not suffer irreparable harm if he is denied access to materials that would facilitate his filing of fraudulent liens. Granting the injunction, on the other hand, is likely to cause harm to others, since it would inhibit the MDOC from stanching the abusive practice of prisoners filing baseless liens and UCC financing statements for the purpose of harassment and credit impairment of the alleged debtor. If the injunction were issued, and the plaintiff were allowed to proceed with filing liens that are not valid (and Smith has not made a showing of their validity to this day), substantial harm to others could result. Finally, the public interest would be damaged, not served, by issuing an injunction that interfered with the MDOC's enforcement of its policy directive.

III.

After *de novo* review, the Court finds that the plaintiff is not likely to succeed on the merits of his claims. Moreover, all the other relevant factors favor denying a preliminary injunction.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #21] is **ADOPTED**.

It is further **ORDERED** that the plaintiff's objections to the report and recommendation [dkt #38] are **OVERRULED**.

It is further **ORDERED** that the plaintiff's motion for preliminary injunction [dkt #3] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 31, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 31, 2009.

s/Lisa M. Ware
LISA M. WARE