UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JASEN SMITH,

        Plaintiff,                        CIVIL ACTION NO. 08-14118

      v.                                      DISTRICT JUDGE DAVID M. LAWSON

BILL CATINELLA, SAL AHMED,        MAGISTRATE JUDGE VIRGINIA M. MORGAN
SHERRY BURT, WILL RILEY,
C. BRADSHAW, YONKIE, and
PRINCE,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

      This is a *pro se* 42 U.S.C. § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that the defendants deprived plaintiff of his rights to access the courts and to due process under the United States Constitution.  The matter comes before the court on defendants' Motion for Summary Judgment (D/E #31).  Plaintiff filed a Response in opposition to defendants' motion for summary judgment (D/E #36).  For the reasons discussed below, this court recommends that defendants' motion be **GRANTED**, that the claims against defendants Burt, Riley, Bradshaw, Yonkie and Prince be dismissed without prejudice due to plaintiff's failure to exhaust his administrative remedies prior to filing suit, and that defendants Catinella and Ahmed be granted summary judgment with

respect to the claims against them.  This court also recommends that, if plaintiff is deemed to have exhausted his administrative remedies against defendants Burt, Riley and Bradshaw, those defendants should be granted summary judgment due to their lack of personal involvement.

## II. Background

On September 25, 2008, plaintiff filed a complaint against defendants Cantinella, Ahmed, Burt, Riley, and Bradshaw (D/E #1).  In that complaint, plaintiff alleges that, on April 30, 2008, he mailed to Judge Philip E. Rodgers, Jr. of the Grand Traverse County, Michigan circuit court a "Motion Pursuant to MCR 2.110-112 Third Party Injured" as part of his attempt to place a lien on the property of Judge Rodgers, plaintiff's sentencing judge, using the provisions of the Uniform Commercial Code (UCC).  Plaintiff also alleges, after Judge Rodgers failed to respond, plaintiff sent him more a "Notice of Default and Opportunity to Cure" and the "Affidavit of the Notice of Default."  Plaintiff further alleges that, rather than responding to the mailings, Judge Rodgers contacted defendant Catinella, a field supervisor at the Department of Corrections, requesting that plaintiff be prohibited from sending him any correspondence.  According to plaintiff, defendant Catinella contacted defendant Ahmed and, on June 19, 2008, defendant Sal Ahmed sent Smith a notice of intent to conduct an administrative hearing.  Plaintiff also alleges that the hearing was conducted by Assistant Resident Unit Manager (ARUS) Halsey on June 30, 2008 and that ARUS Halsey prohibited plaintiff from sending any more mail to Judge Rodgers.  According to plaintiff, under the relevant policy, ARUS Halsey was not the proper person to conduct the hearing and that the administrative hearing had to be conducted by a hearing officer

from the Department of Hearings and Appeals Division or the Hearings Officer who conducts major misconduct reports in the administrative building.

On that same day, plaintiff also filed a motion for preliminary injunction, in which he requested an injunction ordering defendants to refrain from interfering with plaintiff's state litigation (D/E #3). This court subsequently recommended that the motion for preliminary injunction be denied on the basis that the relevant factors[1] all weighed against plaintiff (D/E #21). Plaintiff objected to that report and recommendation (D/E #38), but that objection was overruled, and this court's report and recommendation adopted, by order of the Honorable David M. Lawson on August 31, 2009 (D/E #43).

On November 10, 2008, plaintiff filed a motion to amend his complaint (D/E #8). This court subsequently granted that motion (D/E #16) and plaintiff filed his amended complaint on January 12, 2009 (D/E #20). In that amended complaint, plaintiff first repeats the claims found in his original complaint. Plaintiff then adds two prison librarians as defendants. One of them, defendant Yonkie, allegedly refused to copy provisions of the UCC for the plaintiff and stated that she would have to confiscate the UCC documents from the inmate if she discovered that he had them. The other new defendant, defendant Prince, allegedly removed from the library shelf Title 22, sections 611-612 of the United States Code.

---

[1] "To determine whether to grant a preliminary injunction, a district court must consider: '(1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest.'" Abney v. Amgen, Inc., 443 F.3d 540, 546 -547 (6th Cir. 2006) (quoting Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, 274 F.3d 377, 400 (6th Cir. 2001). However, none of the factors are a prerequisite to relief and the court should balance them. Abney, 443 F.3d at 547.

On March 9, 2009, defendants filed the motion for summary judgment pending before the court (D/E #31). In that motion, defendants argue that defendants Burt, Riley, Bradshaw, Yonkie and Prince are entitled to dismissal based on lack of exhaustion. Defendants also argue that defendants Bradshaw, Riley and Burt are entitled to summary judgment based on the absence of facts demonstrating their personal involvement in the alleged constitutional violation. Defendants further argue that defendants Catinella and Ahmed are entitled to summary judgment based on the absence of a genuine issue of material fact and immunity.

On March 24, 2009, plaintiff filed a response to defendants' motion for summary judgment (D/E #36). In that response, plaintiff argues that the exhaustion requirement is waiveable and that the MDOC waived it in this case by deciding plaintiff's grievances on their merits after this case was filed. Plaintiff also argues that defendants' actions have barred plaintiff from collaterally attacking his conviction.

### III. Standard of Review

Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56(b). Fed. R. Civ. P. 56(b) provides that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Discussion

### A. Exhaustion of Administrative Remedies

Defendants Burt, Riley, Bradshaw, Yonkie and Prince argue that they are entitled to dismissal based on the lack of exhaustion of administrative remedies. Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq.*, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court. Jones v. Bock, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006). Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules." Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").

In this case, the administrative procedure applicable to the plaintiff's claims are set forth in MDOC PD 03.02.130, "Prisoner/Parolee Grievances" (effective date July 9, 2007). (MDOC PD 03.02.130, attached as Exhibit E to Defendants' Motion for Summary Judgment) Pursuant to that policy directive, the MDOC grievance process consists of three steps: a Step I grievance filing setting forth the issue being grieved and identifying the persons involved in the issue after an unsuccessful attempt at a verbal resolution. If the inmate is dissatisfied with the Step I response to his grievance, he may file a Step II appeal; which is followed by a Step III grievance appeal in the event he is dissatisfied with the Step II grievance response.

All grievances pursued through all three steps of the MDOC grievance process are recorded and logged in a computerized grievance tracking system. (MDOC PD 03.02.130, ¶ GG, attached as Exhibit E to Defendants' Motion for Summary Judgment) The grievance inquiry for plaintiff, provided by defendants, demonstrates that plaintiff only completed the

grievance process with respect to one grievance prior to filing this lawsuit: SMT 08-07-00738-28c. (Grievance Inquiry, attached as Exhibit D to Defendants' Motion for Summary Judgment) In Grievance SMT 08-07-00738-28c, plaintiff alleged that defendants Catinella and Ahmed denied him his constitutional rights by stopping his correspondence to his sentencing judge. (Grievance SMT 08-07-00738-28c, attached as Exhibit C to Defendants' Motion for Summary Judgment) Plaintiff also alleged in that grievance that the hearing involving the correspondence was improperly conducted by ARUS Robert Halsey. (Grievance SMT 08-07-00738-28c, attached as Exhibit C to Defendants' Motion for Summary Judgment)

As discussed above, the United States Supreme Court expressly held in Woodford that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 126 S.Ct. at 2386. Here, plaintiff failed to comply with the applicable grievance procedures with respect to defendants Burt, Riley, Bradshaw, Yonkie and Prince because he failed to exhaust any grievances against them through all three stages of the MDOC grievance process prior to filing this lawsuit. Therefore, defendants Burt, Riley, Bradshaw, Yonkie and Prince are entitled to dismissal without prejudice on the claims against them.

Plaintiff correctly asserts in his response that § 1997e does not impose a jurisdictional bar to federal jurisdiction, Curry v. Scott, 249 F.3d 493, 501 -503 (6th Cir. 2001), and that, while the preferred practice is for inmates to complete the grievance process prior to the filing of an action, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in

determining compliance with the statute." Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999). However, the cases cites to by plaintiff do not support his argument and the court should not excuse his failure to exhaust. For example, in Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 536 (7th Cir. 1999), the Seventh Circuit actually rebuked the district court for denying a case on the merits even though the exhaustion requirement was successfully raised, while in Horton v. Potter, 369 F.3d 906, 911-912 (6th Cir. 2004), the defendants failed to raise their argument timely. Moreover, in Spruill v. Gillis, 372 F.3d 218, 234-235 (3rd Cir. 2004) and Gates v. Cook, 376 F.3d 323, 331 (5th Cir. 2004), the exhaustion requirement was deemed satisfied, despite defects in the grievances, because the prisons in those cases decided those grievances on the merits prior to the case be filed.

     Here, plaintiff argues that he completed the MDOC grievance process with respect to his claims against defendants Burt, Riley, Bradshaw, Yonkie, and Prince after he filed he complaint. However, § 1997e(a) requires the prisoner to exhaust his administrative remedies prior to filing suit and, therefore, he cannot exhaust these remedies during the pendency of the action. See Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999). Therefore, the claims against defendants Burt, Riley, Bradshaw, Yonkie, and Prince should be dismissed without prejudice.

### **B. Qualified Immunity**

     Defendants Catinella, Ahmed, Burt, Riley, and Bradshaw also raise the issue of qualified immunity in their motion for summary judgment. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001) *overruled in part by* Pearson v. Callahan, --- U.S. ----, 129 S.Ct.

808, 172 L.Ed.2d 565 (2009), (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir. 1988). A court required to rule upon the qualified immunity issue must consider whether the facts alleged show the officer's conduct violated a constitutional right and whether that constitutional right was clearly established. Saucier, 533 U.S. at 201. In making those inquiries, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

**1. Burt, Riley, and Bradshaw**

Defendants Burt, Riley, and Bradshaw argue that they are entitled to qualified immunity and summary judgment because they were not personally involved in the alleged constitutional violation. To succeed in an action under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation. Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam). Moreover, a *respondeat superior* theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983. See Turner v. City of Taylor, 412 F.3d 629, 649 (6th Cir. 2005); Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir. 1982). "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (citations omitted). Moreover, the Sixth Circuit held in Shehee that a denial of an administrative grievance and the failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983. Shehee, 199 F.3d at 300.

Here, plaintiff's complaint does not name defendants Burt, Riley, or Bradshaw in any of the allegations and those defendants appear to have been involved in the mail prohibition or hearing at issue in this case. In his response, plaintiff neither identifies any personal involvement nor provides any evidentiary support suggesting personal involvement by Burt, Riley, or Bradshaw. Those three defendants all hold supervisory positions within the MDOC, but, as discussed above, a *respondeat superior* theory of liability, based on the right to control

-10-

employees, is not cognizable under 42 U.S.C. § 1983. See Turner, 412 F.3d at 649; Hays, 668 F.2d at 874.

### 2. Catinella and Ahmed

Defendants Catinella and Ahmed argue that they are entitled to qualified immunity and summary judgment with respect to the claims against them because no genuine issue of material fact is in dispute and they are entitled to judgment as a matter of law. Inmates have a constitutionally protected right of access to the courts. See Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). However, the right of access to the courts is not unrestricted and does not mean that an inmate must be afforded unlimited litigation resources. See Lewis v. Casey, 518 U.S. 343, 352-55, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). There is no generalized "right to litigate" which is protected by the First Amendment and "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999). Moreover, an inmate claiming that he was denied access to the courts must show that he suffered an actual litigation-related injury or legal prejudice because of the actions of the defendants. Lewis, 518 U.S. at 349-51; Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999); Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir.1996). Thus, not every infringement or inconvenience suffered by the litigating prisoner implicates this constitutional right. As stated in Lewis:

> The requirement that an inmate alleging a violation of Bounds must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches. It is the role of courts to provide relief to claimants, in individual or class

> actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution. In the context of the present case: It is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the political branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur. Of course, the two roles briefly and partially coincide when a court, in granting relief against actual harm that has been suffered, or that will imminently be suffered, by a particular individual or class of individuals, orders the alteration of an institutional organization or procedure that causes the harm. But the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly. If-to take another example from prison life-a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care, simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons.

Lewis, 518 U.S. at 349-350 (citations omitted).

In this case, plaintiff asserts that defendants Catinella and Ahmed interfered with plaintiff's access to courts with respect to plaintiff's attempt to file a lien against the judge in his criminal case by using provisions of the Uniform Commercial Code (UCC) that define the rights and obligations of debtors and creditors. However, because "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only," Thaddeus-X v. Blatter, 175 F.3d at 391, defendants Cantinella and Ahmed are clearly entitled to summary judgment on all of plaintiff's denial of access to the courts claims. Plaintiff may have

listed his criminal case number as an item in dispute as part of his attempted UCC lien and Judge Rodgers may have played a role at plaintiff's criminal trial, but the attempted lien is not a part of plaintiff's criminal case and it is clearly not a collateral attack on his conviction or sentence.

Moreover, defendants Catinella and Ahmed are also entitled to summary judgment on plaintiff's claims because plaintiff has failed to demonstrate that a genuine issue of material fact exists with respect to whether he suffered an actual litigation-related injury or legal prejudice because of the actions of the defendants. An inmate claiming that he was denied access to the courts must show that he suffered an actual litigation-related injury or legal prejudice because of the actions of the defendants, Lewis, 518 U.S. at 349-51. Plaintiff, at times, asserts that he suffered legal prejudice, but he fails to describe any such prejudice or provide any evidence supporting his allegations. Defendants did not produce any evidence either on this issue, but, because defendants do not bear the ultimate burden of persuasion on the causation issue, defendants need only point out the lack of a genuine issue regarding injury. See Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) ("[w]hen the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial."). As the Supreme Court has explained,

> regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c) is satisfied.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Defendants have pointed out the absence of a genuine factual issue on the material element of injury and plaintiff has failed to respond with any evidence.  This court therefore finds that, even if plaintiff's attempted lien is within the scope of his right to access the court, defendants Catinella and Ahmed would be entitled to summary judgment on plaintiff's denial of access to the courts claims.

### C. Eleventh Amendment Immunity

Defendants Catinella and Ahmed also argue that they are entitled to summary judgment with respect to the claims against them in their official capacity due immunity under the Eleventh Amendment to the United States Constitution.  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State.

U.S. Const. amend. XI.

In general, the Eleventh Amendment immunizes state officials from suit in federal court. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).  The Supreme Court, however, recognized an important exception to this general rule in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), where it held that the Eleventh Amendment does not bar a lawsuit seeking an injunction against a state official prohibiting the state official from enforcing a state statute that allegedly violates the United States Constitution.  "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the]

complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Maryland, Inc. v. Public Service Commission of Maryland, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (quoting Justice O'Connor's concurring opinion in Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)).

In this case, plaintiff's amended complaint is unclear as to what relief he seeks. To the extent that plaintiffs sue defendants for money damages in their official capacities, the claims are properly dismissed as barred by the Eleventh Amendment. See Will v. Mich. Dept. Of State Police, 491 U.S. 58, 64, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

**V. Conclusion**

For the reasons discussed above, the court recommends that defendants' motion be **GRANTED**, that the claims against defendants Burt, Riley, Bradshaw, Yonkie and Prince be dismissed without prejudice due to plaintiff's failure to exhaust his administrative remedies prior to filing suit, and that defendants Catinella and Ahmed be granted summary judgment with respect to the claims against them. This court also recommends that, if plaintiff is deemed to have exhausted his administrative remedies against defendants Burt, Riley and Bradshaw, those defendants should be granted summary judgment due to their lack of personal involvement.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140

(1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                                s/Virginia M. Morgan
                                                Virginia M. Morgan
                                                United States Magistrate Judge

Dated: September 4, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on September 4, 2009.

                                                s/Jane Johnson
                                                Case Manager to
                                                Magistrate Judge Virginia M. Morgan